UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: KATHRYN RAMONA ESQUIBEL            Case No. 17-10498-j7
    Debtor.

YVETTE J. GONZALES, Chapter 7 Trustee
    Plaintiff,

v.                                          Adversary Pro. No. 17-1042-j

JOHN SEXTON,
    Defendant.

MEMORANDUM OPINION

THIS MATTER is before the Court on the Chapter 7 Trustee's Motion for Summary Judgment on Counts 1-3 and 6-7 of the Complaint (the "Motion"). *See* Docket Nos. 19 & 1. Trustee seeks to avoid and recover the transfers under 11 U.S.C. § 548 and applicable state law as constructive fraudulent transfers and as actual fraudulent transfers.[1] In the alternative, the Trustee requests the Court enter an order pursuant to Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56(g) deeming facts established for all purposes. The Defendant, appearing pro se, opposes the Motion.[2] *See* Docket Nos. 20, 21, & 22.

The Court will grant in part and deny in part the Trustee's Motion for Summary Judgment. The Court will grant summary judgment on the issue of when the transfer occurred for the purpose of § 548(d). The Court will also grant summary judgment on the issue of whether

---

[1] Unless otherwise noted, references to the Code or the Bankruptcy Code refer to Title 11 of the United States Code.
[2] In Defendant's Memoranda of Legal Issues in Support of his Response to Yvette J. Gonzales's Motion for Partial Summary Judgment requests the Court dismiss this adversary proceeding and enter an order in Defendant's favor that quiets the title in the property at issue. *See* Docket No. 21. The Court can only act on relief requested by a motion filed under the Fed. R. of Bankr. P. and that relief requested in the Defendant's Memoranda is not properly before the Court. In any case, the Court will deny the Defendant's request to dismiss the case and quiet the title.

Defendant's promise to take care of the Debtor constitutes value under § 548. The Court denies summary judgment on the issue of whether the transfer amounted to constructive fraud or actual fraud under § 548 and applicable state law. The Court deems the facts as established for trial as set forth below.

## FACTS NOT IN GENUINE DISPUTE[3]

A. <u>Jurisdiction and Venue</u>

1. On March 3, 2017, Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. *See* Docket No. 1 in Case No. 17-10498; Trustee's Statement of Undisputed Material Facts, ¶ 1.

2. On May 30, 2017, Trustee commenced this Adversary Proceeding against Defendant. *See* Docket No. 1 in Adversary Pro. No. 17-1042; Trustee's Statement of Undisputed Material Facts, ¶ 4.

3. Defendant is Debtor's brother. Trustee's Statement of Undisputed Material Facts, ¶ 8.

4. The Court has jurisdiction over the Adversary Proceeding under 28 U.S.C. § 1334(b) and/or 28 U.S.C. § 157. This is a core proceeding under 28 U.S.C. § 157. Trustee's Statement of Undisputed Material Facts, ¶¶ 2 & 5.

5. Venue is proper under 28 U.S.C. §§ 1408 & 1409. Trustee's Statement of Undisputed Material Facts, ¶ 6.

---

[3] To the extent the Defendant claims to dispute the facts set forth in this section, the Defendant did not present specific facts showing a genuine dispute.

B. The Property

6. Pre-petition, Debtor owned the real property free and clear of any liens, mortgages, or other encumbrances located at 260 S. 6th St. Santa Rosa, New Mexico 88435 (the "Santa Rosa Property"). Trustee's Statement of Undisputed Material Facts, ¶¶ 9 & 17.

7. Debtor continues to live rent-free in the Santa Rosa Property. Trustee's Statement of Undisputed Material Facts, ¶¶ 16 & 18.

8. Since May 2014, David Kelly, a third-party, has rented a portion of the Santa Rosa Property for $250.00, which is paid to the Debtor on behalf of the Defendant. Trustee's Statement of Undisputed Material Facts, ¶ 19; Defendant's Statement of Undisputed Material Facts, Declaration of John Sexton ¶ 3.

9. The rent money is used by the Debtor and the Defendant to pay for upkeep on the Santa Rosa Property. Defendant's Statement of Undisputed Material Facts, Declaration of John Sexton ¶¶ 4-9.

10. The Debtor uses rent money to pay bills associated with the Santa Rosa Property. Trustee's Statement of Undisputed Material Facts, ¶¶ 21 & 22.

11. Defendant has spent at least $4,072.91, including the rental income, on the Santa Rosa Property in upkeep and repairs. Trustee's Statement of Undisputed Material Facts, ¶ 24; Defendant's Statement of Undisputed Material Facts, Declaration of John Sexton ¶ 6.

C. The Debtor's Divorce

12. On May 10, 2011, Debtor filed a petition to dissolve her marriage to Mr. Joe Esquibel in the Fourth Judicial District Court of New Mexico (the "Divorce Case"). Trustee's Statement of Undisputed Material Facts, ¶ 29.

13. Debtor was represented in the Divorce Case by the Law Firm of Martin Lopez III, P.C. (the "Lopez Firm"). Debtor was also represented in the Divorce Case by the Law Firm

of Gerber & Bateman, P.A. (the "Gerber Firm"). Trustee's Statement of Undisputed Material Facts, ¶¶ 30 & 32.

14. On May 1, 2014, the Lopez Firm filed a Notice of Attorney's Charging Lien in the Divorce Case asserting a charging lien in the amount of $60,082.77, plus a late fee on the unpaid amount at an 18% per annum rate (the "Lopez Lien"). Trustee's Statement of Undisputed Material Facts, ¶ 31.

15. On May 12, 2014, the Gerber Firm filed a Notice of Attorney's Charging Lien in the Divorce Case asserting a charging lien in the amount of $15,371.06, plus a late fee on the unpaid amount at a 1.5% per month rate (the "Gerber Lien"). Trustee's Statement of Undisputed Material Facts, ¶ 33.

16. On May 30, 2014, the District Court endorsed the Marital Settlement Agreement and entered the Judgment and Final Decree of Dissolution of Marriage. Trustee's Statement of Undisputed Material Facts, ¶ 37; Defendant's Statement of Undisputed Material Facts, Declaration of Katheryn Ramona Esquibel ¶ 11.

    a. The Marital Settlement Agreement awarded the Debtor as assets:
   i. The Santa Rosa Property
   ii. A 1997 Chevy S-10, a 1994 Cadillac DeVille, and a 1986 Lincoln Town Car;
   iii. Cash award of $52,984.12 from Mr. Esquibel's retirement account;
   iv. Gold and Silver coins;
   v. Her massage business;
   vi. Two time shares, with the condition that she was solely responsible for the fees and other costs;
   vii. Equalization payment for any cattle, equipment, or other business operations of $47,015.88.
   viii. Equalization payment of $100,000 upon entry of the final decree.

    b. The Debtor took on debts in the Marital Settlement Agreement of:
   i. Mortgage associated with the Santa Rosa Property;
   ii. Any debt associated with the Debtor's assets awarded in the Marital Settlement Agreement;

4

iii. All of Debtor's attorney's fees and costs incurred in the Divorce Case.

17. On June 6, 2014, the District Court entered Judgment & Order Granting Law Firm of Martin Lopez III, P.C.'s Expedited Motion to Foreclose Claim of Lien. The District Court awarded the amount of $60,082.7 plus a late fee on the unpaid principal amount at a rate of 18% per annum. Trustee's Statement of Undisputed Material Facts, ¶ 34.

18. On June 17, 2014 the District Court entered Judgment & Order Granting Law Firm of Gerber Expedited Motion to Foreclose Claim of Lien. The District Court foreclosed the Gerber Lien at the amount of $10,645.75 plus a late fee of $2,362.66 along with a rate of 18% per annum. Trustee's Statement of Undisputed Material Facts, ¶ 35.

19. The Gerber Lien and the Lopez Lien were paid. Defendant's Statement of Undisputed Material Facts, Declaration of Katheryn Ramona Esquibel ¶ 5.

20. On June 20, 2014, a special warranty deed was executed in favor of the Debtor by Mr. Esquibel deeding his interest to the Santa Rosa Property. Defendant's Statement of Undisputed Material Facts, Declaration of Katheryn Ramona Esquibel ¶ 8.

D. <u>The Appeal of the Divorce Case</u>

21. On June 19, 2014, the Debtor appealed rulings from the Divorce Case to the Court of Appeals of the State of New Mexico (the "Appeal"). Trustee's Statement of Undisputed Material Facts, ¶ 38.

22. On August 29, 2016, the Court of Appeals entered a Memorandum Opinion in the Appeal. Trustee's Statement of Undisputed Material Facts, ¶ 39.

23. The Lopez Firm was awarded attorney's fees in association with the appeal, to be paid by the Debtor. The fees for the appeal totaled $22,989.33. Trustee's Statement of Undisputed Material Facts, ¶¶ 39 & 42.

24. On January 9, 2017, the Court of Appeals also entered an Order granting attorney's fees associated with the Appeal to Mr. Esquibel's attorneys. Trustee's Statement of Undisputed Material Facts, ¶ 41.

E. The Property Transfer

25. On May 19, 2014, Debtor executed a quitclaim deed, deeding the Property to the Defendant.[4] Trustee's Statement of Undisputed Material Facts, ¶ 10.

26. The quitclaim deed was signed and notarized. Defendant's Statement of Undisputed Material Facts, Declaration of John Sexton, ¶¶ 1 & 12.

27. In exchange for the Santa Rosa Property Defendant gave Debtor the promise to:
   a. Maintain the premises;
   b. provide Debtor with a rent-free place to live for so long as she is able to live independently;
   c. Care for Debtor in Defendant's home should she become unable to care for herself.

Trustee's Statement of Undisputed Material Facts, ¶ 28; Defendant's Statement of Undisputed Material Facts, Declaration of John Sexton, ¶¶10, 13, &14.

28. Debtor's declaration states that "maintenance costs were a key concern for me in reaching a deal to sell the Property, as was the amount of rent, the costs of, and need for maintenance and improvements and a host of other issues (e.g. taxes, insurance, repair quality and timing of repairs)." Defendant's Statement of Undisputed Material Facts, Declaration of Katheryn Ramona Esquibel, ¶ 13.

---

[4] The quitclaim deed was executed after the Lopez Firm and the Gerber Firm noticed their attorney charging liens but prior to the District Court foreclosing the liens. Furthermore, the quitclaim deed was executed before the Special Warranty Deed was executed and recorded granting the Debtor Mr. Esquibel's interest in the Santa Rosa Property as a part of the Marital Settlement Agreement.

6

29. On September 7, 2016, 177 days before Debtor filed her voluntary petition, Defendant recorded the quitclaim deed in the Guadalupe County Clerk's Office as instrument number 201663843.[5] Trustee's Statement of Undisputed Material Facts, ¶ 11.

F. The Debtor's Income According to her Schedules

30. According to the Debtor's schedules, filed under oath, Debtor had assets of $14,030.00 and liabilities of $65,089.92 on the Petition Date.[6] Trustee's Statement of Undisputed Material Facts, ¶ 14(a).

31. From January 1, 2016 until March 3, 2017, Debtor did not earn any income from employment or from operating a business. Trustee's Statement of Undisputed Material Facts, ¶ 14(c).

32. From January 1, 2016 until March 3, 2017, Debtor collected $59.00 in interest and or dividends. Trustee's Statement of Undisputed Material Facts, ¶ 14(d).

33. In the ninety days prior to Debtor's bankruptcy:

   a. No payments were made to any creditor totaling $600.00 or more. Trustee's Statement of Undisputed Material Facts, ¶ 14(e).
   b. The Debtor did not have any set offs. Trustee's Statement of Undisputed Material Facts, ¶ 14(i).

34. In the year prior to Debtor's bankruptcy:

   a. No payments were made to insiders, other than the recording of the Santa Rosa Property. Trustee's Statement of Undisputed Material Facts, ¶ 14(f).
   b. No payment was made on debt to an insider, transfer any property on account of a debt to an insider. Trustee's Statement of Undisputed Material Facts, ¶ 14(g).
   c. No property taken involuntarily. Trustee's Statement of Undisputed Material Facts, ¶ 14 (h).
   d. No property was in possession of an assignee for the benefit of creditors, a court appointed receiver, a custodian, or another official. Trustee's Statement of Undisputed Material Facts, ¶ 14(j).

---

[5] The quitclaim deed was recorded nine days after the Court of Appeals entered the Memorandum Opinion against the Debtor. The quitclaim deed was recorded with the County Clerk within a year of the petition date.
[6] There is some discrepancy between the Debtor's property listed on Schedule A/B and the property the Debtor claims as exempt on Schedule C. At most Debtor had $4,000 of nonexempt assets when she filed bankruptcy.

7

e. No property was lost to theft, fire, other disaster or gambling. Trustee's Statement of Undisputed Material Facts, ¶ 14(m).

35. In the two years prior to Debtor's bankruptcy:

   a. No gifts totaling more than $600.00 per person were given. Trustee's Statement of Undisputed Material Facts, ¶ 14(k).
   b. No donations more than $600.000 were given to any charity. Trustee's Statement of Undisputed Material Facts, ¶ 14(l).
   c. No property was transferred. Trustee's Statement of Undisputed Material Facts, ¶ 14(n).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to a material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The purpose of summary judgment is to streamline litigation and avoid unnecessary cost at trial. *Mitchell v. Zia Park, LLC*, 842 F. Supp. 2d 1316, 1321 (D.N.M. 2012)("Principal purposes of summary judgment include streamlining litigation and saving needless time and expense by isolating and disposing of purely legal issues and factually unsupported claims and defenses."); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ("Summary judgment procedure is properly regarded . . . as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action."). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and . . . demonstrat[ing] the absence of a genuine issue of material fact." *Id.* at 323.

The non-moving party "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010). The non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, (1986). In opposing

8

summary judgment, the Defendant offered bald declarations from the Debtor, the Defendant and a third-party familiar with the proceedings, Mr. Kelly (the "Declarations"). The declarations offered by the Defendant do not comply with 28 U.S.C. § 1746, which require that the declarant to declare the writing is true by stating, "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." However, Fed. R. of Civ. P. 56 gives the Court the discretion to consider facts in an inadmissible form if the fact could be presented at trial in an admissible form. The Court will therefore consider the Declarations offered by the Defendant regarding the transfer of the Santa Rosa Property.

In determining summary judgment, the Court construes all facts and reasonable inferences in the light most favorable to the non-moving party. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990)("we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."). The Court "asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Anderson*, 477 U.S. at 252.

DISCUSSION

The Trustee asserts that the transfer of the Santa Rosa Property is avoidable due to constructive fraud and/or actual fraud under 11 U.S.C. § 548 of the Bankruptcy Code and applicable state law. The Defendant maintains he is a bona fide purchaser of the Santa Rosa Property. As there are genuine issues of material facts on the issues of whether the transfer of the Santa Rosa Property constitutes constructive and/or actual fraud under 11 U.S.C. § 548 and applicable state law, the Court will deny in part the Trustee's motion for summary judgment. The

9

Court will grant summary judgment on the threshold issue of when the Santa Rosa Property was transferred for the purpose of the avoidability action under § 548. The Court will also grant summary judgment on the issue of whether Defendant's promise to take care of the Debtor constitutes value under § 548.

    A. <u>Transfer from Debtor to Defendant</u>

As a threshold issue, the Trustee argues that the Santa Rosa Property was transferred on September 7, 2016, when the deed was recorded in the Guadalupe County Clerk's Office. The Defendant asserts that the transfer occurred when the quitclaim deed was signed and notarized on May 19, 2014.[7] The Court concludes that for the purpose of a fraudulent transfer action under § 548, the Santa Rosa Property was transferred on September 7, 2016.

Under the Bankruptcy Code, "transfer" is defined as ". . . each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with – (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D). The definition of "transfer" is interpreted broadly to include "any transfer of an interest in property." *In re Veretto*, 131 B.R. 732, 736 (Bankr. D.N.M. 1991).

In addition, § 548(d) states "a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee." 11 U.S.C. § 548(d)(1). The purpose of § 548(d) is "to prevent fraudulent transfers from becoming impregnable to attack by keeping them secret until the limitation period has lapsed. In effect, a transfer is not made for the purposes of section 548(d)(1) until it becomes known or discoverable by the exercise of reasonable diligence." *Butler v. Lomas*

---

[7] Defendant's argument is undercut by the fact that Debtor collected rental income through 2015. If the transfer did in fact occur in 2014, she would not have received the rental income.

10

& *Nettleton Co.*, 862 F.2d 1015, 1019 (3d Cir. 1988). New Mexico state law is the applicable law to determine when the transfer is perfected against a later acquired interest.

New Mexico state law provides, "No deed, mortgage or other instrument in writing not recorded in accordance with Section 14-9-1 NMSA 1978 shall affect the title or rights to, in any real estate, of any purchaser, mortgagee in good faith or judgment lien creditor, without knowledge of the existence of such unrecorded instruments." N.M. Stat. Ann. § 14-9-3. Section 14-9-1 NMSA 1978 states, "All deeds, mortgages, . . . and other writings affecting the title to real estate shall be recorded in the office of the county clerk of the county or counties in which the real estate affected thereby is situated." As such, under New Mexico state law, a transfer is perfected when it is recorded with the county clerk of the state in which the real estate is situated. *See In re Veretto*, 131 B.R. 732, 737 (Bankr. D.N.M. 1991)("New Mexico law is clear: it is upon recordation that a transfer of an interest in real property is perfected."); *In re Shannis*, 229 B.R. 234, 237 (Bankr. M.D. Fla. 1999)("for fraudulent conveyance purposes under § 548, the date the Property was initially transferred to Junior occurred on the date the deed was recorded."); *In re Wolf*, No. 15-31477-HCM, 2016 WL 4940198, at *23 (Bankr. W.D. Tex. Sept. 15, 2016)("The dates of the execution and delivery of the unrecorded deeds . . . are not the dates of "transfer" for fraudulent conveyance purposes.").

In this case, the Debtor signed and notarized the quitclaim deed on May 14, 2014 and deeded the real property to her brother. The deed was not recorded with the Guadalupe County Clerk until September 7, 2016. Under § 548(d) the transfer did not occur until recordation. September 7, 2016 is 177 days prior to the Debtor's filing of bankruptcy and therefore within the two-year look-back period under § 548(a).

11

B. <u>Constructive fraud under 11 U.S.C. § 548(a)(1)(B) and applicable state law</u>

The Trustee argues that the transfer of the Santa Rosa Property is avoidable under § 548(a)(1)(B)'s constructive fraud provision. The Trustee asserts that the consideration in the form of an agreement to allow the Debtor to live rent free and care for the Debtor is not reasonably equivalent value for the Santa Rosa Property. The Trustee also argues that the Debtor was insolvent or became insolvent due to the transfer of the Santa Rosa Property. The Defendant argues that his consideration was reasonably equivalent value and that the Debtor was not insolvent when the Santa Rosa Property was transferred.

Unlike the analysis for actual fraud, to determine constructive fraud, the Court does not inquire into the Debtor's subjective intent. Instead, under § 548(a)(1)(B) the Trustee may avoid any transfer if the Debtor:

> received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; . . . [or] (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a)(1)(B).

1. *Genuine issues of material fact preclude summary judgement on the issue of whether the Debtor received reasonably equivalent value in exchange for the Santa Rosa Property.*

The Trustee argues the Debtor received less than reasonably equivalent value for the Santa Rosa Property because the consideration offered was a promise that the Debtor could live rent free at the Santa Rosa Property and that the Defendant would take care of her if she was unable to take care of herself. Defendant disagrees. Defendant also asserts that the Court should take into account the fact that the Debtor could not afford to maintain or pay the taxes on the property.

12

"Whether the transfer is for 'reasonably equivalent value' under § 548(a)(2) in every case is largely a question of fact." *In re Wes Dor, Inc.*, 996 F.2d 237, 242 (10th Cir. 1993)(quoting, 4 *Collier on Bankruptcy* ¶ 548.09, at 548-112 (15th ed.1993)). Determining reasonably equivalent value is not formulaic, instead the Court looks to the facts and circumstances of the case. *In re Bulmer,* No. AP 15-50153, 2017 WL 562436, at *4 (Bankr. S.D. Ind. Feb. 10, 2017)(" "There is no precise mathematical formula involved in determining reasonably equivalent value; rather it is a "common sense" inquiry that considers the circumstances of each case.").

The Tenth Circuit Bankruptcy Appellate Panel described a bankruptcy court's analysis as

> A determination of whether a transfer involved the exchange of reasonably equivalent value requires consideration of whether or not the transferor's unsecured creditors were better off before or after the transfer. In other words, courts must calculate the net value received from a transaction, and include any benefit received by the transferor, regardless of its source.

*In re Expert S. Tulsa, LLC*, 534 B.R. 400, 413 (B.A.P. 10th Cir. 2015), *aff'd,* 842 F.3d 1293 (10th Cir. 2016); *see also Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997)("The test used to determine reasonably equivalent value in the context of a fraudulent conveyance requires the court to determine the value of what was transferred and to compare it to what was received.").

Defendant's promise that he would take care of her if she was unable to take care of herself does not constitute value for purposes of determining whether the Debtor received reasonably equivalent value in exchange for transferring the Santa Rosa Property to the Defendant. The Code defines value in the context of fraudulent transfers as "property, or satisfaction or securing of a present or antecedent debt of the debtor, *but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor*." 11 U.S.C. § 548(d)(2)(emphasis added). The Defendant is the Debtor's brother. Under § 548(d)(2), his promise to furnish her with support does not constitute value.

13

Therefore, at most, the consideration the Debtor received in exchange for the Santa Rosa property was Defendant's agreement to allow her to live at the property rent free. While the Court is skeptical about whether that constitutes reasonably equivalent value, or even whether an oral promise to rent real property on a long-term basis is enforceable, the Court will allow Defendant to put on evidence of value at trial. The Trustee has provided no evidence to the Court of the market value of the Santa Rosa Property or the rental value of the property. Nor has the Trustee argued that the alleged oral lease is unenforceable under the statute of frauds.

The Court also notes that any agreement by Defendant to maintain or pay the taxes on the Santa Rosa Property does not constitute value received by the Debtor in exchange for her transfer of the property to Defendant. After the transfer, the Defendant owned the property and provided benefit to himself by maintaining the property and paying taxes on it.

   2. *Genuine issues of material fact preclude summary judgement on the issue of whether the Debtor was insolvent at the time of the transfer.*

The Trustee argues that the Debtor was insolvent on September 7, 2016. However, the facts established for purposes of summary judgment do not establish the value of the Debtor's assets upon the transfer of the Santa Rosa Property to the Defendant or immediately after the transfer.

   C. Actual fraud under 11 U.S.C. § 548(a)(1)(A) and applicable state law

The Trustee asserts that the circumstantial evidence regarding the badges of fraud is overwhelming enough to allow the Court to find actual fraud at summary judgment. The Trustee points to the fact that the transfer was to an insider for no consideration; the Debtor continues to live at and control the property; the transfer was concealed for two years until it was recorded with the Guadalupe County Clerk; the transfer occurred while Debtor was in the midst of a contentious and prolonged Divorce Case; the Santa Rosa Property was the largest asset of the

14

Debtor; the Debtor concealed her interest in the Santa Rosa Property; the Debtor received less than reasonably equivalent value; the Debtor was insolvent at the time of the Transfer; and the quitclaim deed was signed and notarized at the time the Debtor incurred substantial attorney's fees and was recorded shortly after New Mexico Court of Appeals entered a memorandum opinion ruling against the Debtor.

The Defendant maintains that he is a bona fide purchaser of the Santa Rosa Property who paid reasonably equivalent value. He argues that there was consideration in the form of a verbal agreement allowing the Debtor to live rent free at the property, and a promise to care for the Debtor if she is unable to care for herself. Defendant also argues that the Transfer was not concealed because the reason the quitclaim deed was not recorded when it was executed was because the Debtor had not yet received the Special Warranty Deed from her ex-husband. In addition, Defendant maintains, that the Debtor does not control the property but that she only collects rent as his agent and any improvements done with the rental income were done at his cost.

Under the Code, the Trustee bears the burden of proof to show that the transfer of the Santa Rosa Property was made with actual fraud and is thus avoidable. § 548(a) states:

> (1) The trustee may avoid any transfer . . . of an interest of the debtor in property, . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily-- (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted . . .

11 U.S.C. § 548(a)(1)(A).[8] The key component in actual fraud is the debtor's intent in making the transfer. As a debtor seldom admits that the transfer was made with the actual intent to

---

[8] New Mexico state law mirrors the federal standard. N.M. Stat. Ann. § 56-10-18 states, "A. A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

"hinder, delay, or defraud" a creditor the Court can look to the "badges of fraud" in the facts and circumstances of the transfer. *See Tracy Lynne Zubrod, Tr. v. Denise L. Kelsey, Scott Barry Kelsey (In re Denise L. Kelsey, Scott Barry Kelsey)*, 270 B.R. 776, 782 (B.A.P. 10th Cir. 2001)("a court may consider circumstantial evidence establishing badges of fraud.")(citing, *Julia W. Taylor v. Stephen W. Rupp, Tr.(In re Stephen W. Rupp, Tr.)*, 133 F.3d 1336, 1339 (10th Cir. 1998)("under 11 U.S.C. § 548(a)(1) bankruptcy courts consider similar badges of fraud as evidence of actual fraudulent intent.")). The badges of fraud that the Court examines to determine the Debtor's intent include:

> [1] whether the transfer was to an insider; [2] whether the debtor retained possession or control of the property after the transfer; [3] concealment of the transfer; [4] pending or threatened litigation against the debtor at the time of transfer; [5] a transfer of substantially all of the debtor's assets; [6] absconding by the debtor; [7] removal or concealment of assets; [8] reasonably equivalent value in exchange for the transfer; [9] the debtor's insolvency at the time of the transfer; [10] the proximity in time of the transfer to the incurrence of a substantial debt; and [11] a transfer of substantial business assets to a lien or followed by a subsequent transfer of such assets to an insider of the debtor.

*Tracy Lynne Zubrod, Tr. v. Denise L. Kelsey, Scott Barry Kelsey (In re Denise L. Kelsey, Scott Barry Kelsey)*, 270 B.R. 776, 782 (B.A.P. 10th Cir. 2001). Under New Mexico state law the Court can consider similar factors to determine actual fraud. *See* N.M. Stat. Ann. § 56-10-18B.[9]

---

(1) with actual intent to hinder, delay or defraud any creditor of the debtor . . ."

[9] N.M. Stat. Ann. § 56-10-18B lists eleven factors for a court to consider when determining actual intent. Those factors mirror the factors considered under federal law. The eleven factors are: "(1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor has been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lien or who transferred the assets to an insider of the debtor." N.M. Stat. Ann. § 56-10-18B.

Actual fraud depends on the Debtor's mental state, therefore summary judgment ordinarily is inappropriate on the issue of whether the Debtor had actual intent to hinder, delay, or defraud. *See Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 711 (2d Cir. 1991)(" The intent of the parties to the transaction is purely a question of fact . . . Ordinarily, such issues are inappropriate for summary judgment.") (internal citations and quotations omitted). *In re Canyon Sys. Corp.*, 343 B.R. 615, 636 (Bankr. S.D. Ohio 2006) ("Because the Debtor's subjective intent is in issue, summary judgment is generally not an appropriate mechanism for adjudication of an actual fraudulent transfer claim." *In re Tenorio*, 2018 WL 989691, at *12 (B.A.P. 9th Cir. Feb. 8, 2018)("This is the unusual case in which summary judgment on an actual intent fraudulent transfer claim was proper. Normally, it is error to grant summary judgment on an issue of intent.").

Although, the Trustee has established facts that indicate the existence of several badges of fraud thereby suggesting fraudulent intent, the Court exercises its discretion to give the Defendant the opportunity to present testimony on the issue of the Debtor's intent. The Court will deny summary judgment on this issue.

D. <u>Establishing Facts for Trial</u>

Fed. R. Civ. P. 56(g) made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056 provides:

> If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case.

Fed. R. Civ. P. 56(g). In the Motion, the Trustee requested that in the event the Court did not grant summary judgment, that it enter an order establishing material facts not in genuine dispute for trial. The Defendant did not object to the Court entering such an order. And in any event, the Court has determined it is appropriate to treat as established in this adversary proceeding,

17

including for purposes of trial, each and every enumerated fact set forth in the section of this opinion entitled "Facts Not in Genuine Dispute."

CONCLUSION

The facts not in genuine dispute set forth in the section of this opinion entitled "Facts Not in Genuine Dispute" are deemed established for all purposes in this adversary proceeding, including for purposes of trial. The Court grants the Chapter 7 Trustee summary judgment on the threshold issue of when the transfer occurred and concludes that it occurred within the two-year look back period under § 548 (a). The Court also grants the Trustee summary judgment on the issue of whether Defendant's promise that he would take care of the Debtor if she was unable to take care of herself constitutes value under § 548. The Court denies the Chapter 7 Trustee's motion for summary judgment as to all other issues. The Court will enter a separate order consistent with this opinion.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: July 23, 2018.

COPY TO: All counsel of record via CM/ECF, and:

John Sexton
3502 33rd Circle
Rio Rancho, NM 87124

Kathryn Ramona Esquibel
260 South 6th Street
Santa Rosa, NM 88435

David Alton Kelly
252 S. 6th Street
P.O. Box 414
Santa Rosa, NM 88435